**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action: 1:25-cv-02002-GPG-MDB

JEANETTE FISTER,

Plaintiffs,

v.

CITIZENS FINANCIAL GROUP INC.,
and FREEDOM FOREVER COLORADO, LLC,
and SOLAR MOSAIC, LLC, and AARON SCHNEIDER,
and JOHN DOE and VIVINT HOME SECURITY SYSTEMS,

Defendants.

---

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

---

## Introduction

Defendants seek to compel an elderly widow living on a fixed income into arbitration under contracts that were procured through fraud, misrepresentation, and financial exploitation. Plaintiff, Ms. Fister, admits she intended to purchase a home security system. However, Defendants fraudulently used her phone to execute additional contracts she never authorized—including a 25-year solar panel financing agreement—and they pressured her into signing even the security contract through scare tactics after an intruder in her backyard left her fearful in her own home.

Because the making of the alleged arbitration agreement is in dispute, the Federal Arbitration Act ("FAA") requires this Court—not an arbitrator—to resolve arbitrability. See 9 U.S.C. § 4 ("If the

making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof."). The Supreme Court likewise confirms that disputes over contract formation are for courts to decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Here, Defendants' fraudulent conduct in procuring both the security and solar contracts invalidates the arbitration clauses contained in those agreements. Further, the two contracts at issue in this case are interdependent; the arbitration clause is overbroad and unconscionable; and Defendants waived any right to arbitrate by actively invoking this Court's jurisdiction.

**Statement of Facts**

On or about May 25, 2023, Defendants' agents (Defendant Schneider and an associate, John Doe) visited Mrs. Fister's home in Colorado to sell her a home security system. The night before, an intruder had been spotted in Mrs. Fister's backyard, leaving her feeling fearful and vulnerable. Exploiting this fear, Defendants induced her to agree to the installation of a security system. Defendants then engaged in a pattern of fraudulent conduct by:

- Taking Plaintiff's phone and executing electronic contracts in her name that she never authorized;
- Entering a 25-year financing agreement for a solar panel system without her knowledge or consent;
- Using her phone to apply for and secure financing for the solar panels without her authorization; and
- Continuing to demand payment and harming her credit despite her repeated objections to these unauthorized obligations.

Although Mrs. Fister intended to purchase only a security system, she was fraudulently bound to a long-term solar financing contract she never approved. These agreements were procured by the agent who represented both companies on both contracts. Even the security system contract, however, was procured through fraudulent inducement and duress, as Defendants deliberately preyed upon her fear as a widowed woman living alone.

As a result of Defendants' misconduct, Mrs. Fister is now burdened with fraudulent debt, damage to her credit, severe emotional distress, and ongoing collection attempts—all stemming from transactions to which she never gave valid consent. She lives in constant fear that her home will be taken from her and she will be moved to an assisted living facility.

## Argument

### I. The Court Must Decide Arbitrability Because the Making of the Agreements Is in Dispute

The FAA enforces arbitration only where the parties genuinely agreed to arbitrate. Section 4 of the FAA expressly provides: "If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. In other words, when there is a genuine dispute as to whether an arbitration agreement was ever formed, the court must resolve that threshold issue.

The Supreme Court has confirmed that where the dispute at issue concerns contract formation, courts decide the question of arbitrability. *Granite Rock*, 561 U.S. at 296. Lower courts echo this rule: for example, the Ninth Circuit warned that a contrary approach would be "untenable," since *"Party A could forge Party B's name ... and compel Party B to arbitrate the question of the genuineness of its signature." Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d

1136, 1140 (9th Cir. 1991). Similarly, the Third Circuit has held that *"even under the severability doctrine, there may be no arbitration if the agreement to arbitrate is nonexistent." Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 105 (3d Cir. 2000).

Colorado law is in accord. Colorado recognizes the doctrine of "separability," but it makes the same distinction: when a fraud challenge is directed at the contract as a whole, an arbitrator ordinarily decides it; but when the dispute concerns the very formation or existence of the agreement, the court must resolve that issue first. See *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 119–20 (Colo. 2007) (because the Ingolds' fraud claim was "directed to the enforceability of the Lease as a whole, not specifically to the Lease's arbitration provision," the arbitrator had to decide it under the separability rule). Here, by contrast, Ms. Fister's challenge goes to contract formation and authorization itself: she alleges there was no valid assent because Defendants surreptitiously used her phone to approve contracts and financing in her name, and because her signature on the security contract was procured through duress. These are quintessential formation issues for the Court to determine.

Indeed, one of the contracts at issue was procured by outright fraud (Defendants took her phone, applied electronic signatures without consent, and obtained financing in her name), and the other was obtained through coercion and duress. Such allegations go to whether any valid agreement to arbitrate ever came into being. Accordingly, under 9 U.S.C. § 4 and the above authority, it is for this Court—not an arbitrator—to decide whether any enforceable arbitration agreement exists.

## II. The Contracts Are Interdependent and Cannot Be Separated

The security system contract and the solar panel contract were presented to Mrs. Fister in a single, coordinated sales encounter and share a common nucleus of operative facts (including an alleged joint scheme involving the use of Plaintiff's phone to authorize both agreements). Arbitration under the FAA remains "a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). Where one of two closely related contracts is void ab initio for fraud or lack of assent, and both agreements are factually inseparable, the Court should not split the dispute between arbitration and litigation in a way that assumes the existence of a valid arbitration agreement. Put simply, a court should not compel arbitration of claims arising from one contract while the intertwined claims arising from the other contract remain in court, when the very *existence* of an agreement to arbitrate is in question. Notably, in *Ingold* the Colorado Supreme Court applied the separability doctrine only because a valid contract was conceded to exist (the tenants challenged the lease as a whole on a theory of fraudulent inducement, so the arbitrator decided that issue). Here, however, Plaintiff contends that no valid contract was ever formed in the first place. She accordingly seeks a judicial determination under FAA § 4 on the threshold question of contract formation before any forum can be chosen. Under these circumstances, the contracts cannot be treated in isolation, and arbitration should not be compelled for one part of this dispute when the overall formation of any agreement is in serious doubt.

## III. The Arbitration Clause Is Overly Broad and Unconscionable

Even assuming *arguendo* that a contract had been formed, the arbitration clause is unenforceable due to its overbreadth and unconscionability. Colorado applies traditional principles of

unconscionability, examining both procedural and substantive elements. The Colorado Supreme Court in *Davis v. M.L.G. Corp.* set forth the test for unconscionability as follows:

"... there must be evidence of some overreaching … such as that which results from an inequality of bargaining power or … an absence of meaningful choice … together with contract terms which are unreasonably favorable to that party." *Davis* v. *M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986) (emphasis added).

In applying *Davis*, courts consider a variety of factors, including: (1) whether the contract is on a standardized, adhesion basis; (2) the lack of opportunity for a meaningful choice or to read the contract before signing; (3) the use of fine print to conceal terms; (4) a lack of commercial reasonableness or foreseeability of the terms; (5) the presence of terms that are substantively unfair or one-sided; (6) the relationship of the parties (including factors of assent and unfair surprise); and (7) the overall circumstances surrounding the formation of the contract. *See id.* at 991 (listing factors for unconscionability); *see also Davis*, 712 P.2d at 991 (noting this multifactor analysis has been frequently cited by federal courts in Colorado).

Here, the arbitration clause at issue is overly broad, highlighting its substantive unconscionability. The clause purports to sweep in "any and all disputes" between Ms. Fister and the Defendants – including disputes arising from the separate solar financing agreement to which she never consented. In other words, Defendants are attempting to force into arbitration claims that are not only unrelated to the security system contract, but are premised on a wholly unauthorized agreement. This overreach goes far beyond Mrs. Fister's reasonable expectations and underscores how one-sided and oppressive the clause is. An arbitration provision that tries to

bind a party to arbitrate *every conceivable dispute*, even those based on transactions she never knowingly approved, is the very definition of substantively unconscionable under the *Davis* test. Colorado law may favor the enforcement of fair arbitration agreements – for example, in the context of routine insurance or healthcare contracts – but that policy does not render an unconscionable or overbroad clause enforceable. *See Rains v. Found. Health Sys. Life & Health*, 23 P.3d 1249, 1253–54 (Colo. App. 2001) (recognizing Colorado's policy favoring arbitration while still applying ordinary contract defenses, including unconscionability). In short, the general presumption in favor of arbitration cannot save an arbitration clause that, as here, *goes beyond the parties' actual agreement and violates fundamental fairness*. This Court should therefore refuse to enforce the clause as written.

**IV. Defendants Waived Arbitration by Invoking the Judicial Process**

A party may waive its contractual right to arbitrate by substantially invoking the litigation machinery before seeking arbitration. The U.S. Supreme Court has made clear that courts cannot invent special procedural rules to protect arbitration. In *Morgan v. Sundance, Inc.*, the Court unanimously held that courts may not impose an arbitration-specific requirement that the party opposing arbitration demonstrate prejudice; rather, waiver of an arbitration clause is to be evaluated under the same principles as waiver of any other contract right. 142 S. Ct. 1708, 1712–13 (2022). In other words, if a party knowingly relinquishes its right to arbitrate by acting inconsistently with that right, it may be found to have waived arbitration – without any need to show prejudice to the other side. *Id.* at 1713.

Colorado law is in accord that a party can waive an arbitration clause through litigation conduct, despite this state's policy favoring arbitration. In *Cordillera Corp. v. Heard*, for example, the

Colorado Court of Appeals explained that although Colorado strongly favors arbitration, "the right to arbitrate may be waived like any other contractual right." 41 Colo. App. 537, 592 P.2d 12, 14 (1978) (internal quotation marks omitted). The court further noted that "[a] valid and unwaived arbitration clause deprives the court of jurisdiction" until arbitration is completed – implicitly recognizing that a waiver *restores* the court's jurisdiction. *Id.* at 13. In that case, the trial court's order compelling arbitration was reversed because the plaintiff had pursued the lawsuit for an extended period (and the defendant answered and litigated) before anyone invoked the arbitration clause, thereby waiving it through litigation conduct. *See id.* at 13–15.

Similarly, in *Bashor v. Bache Halsey Stuart Shields, Inc.*, the Colorado Court of Appeals found a waiver and reversed an order compelling arbitration where the defendants had: (i) failed to assert the arbitration agreement as a defense in their answers, and (ii) actively participated in discovery and other pretrial proceedings – conduct the court deemed "sufficiently inconsistent with [an] intent to arbitrate so as to constitute a waiver" of that right. 773 P.2d 578, 580–82 (Colo. App. 1988). Notably, the *Bashor* defendants took extensive depositions and obtained judicial discovery (even resisting the plaintiff's discovery efforts) before moving to compel arbitration, and only sought arbitration months into the lawsuit – after gaining the benefits of the court process that would not have been available in arbitration. *Id.* at 581–82. The court held that this conduct, and the delay in invoking arbitration, waived the arbitration clause, especially since the defendants' use of judicial discovery gave them an advantage unavailable in the arbitral forum. *Id.*

In the present case, Defendants have behaved in exactly the kind of manner that constitutes waiver. They chose to remove this action to federal court and litigate it – engaging in motion

practice and invoking the Court's processes – rather than promptly moving to compel arbitration at the outset. Such deliberate engagement in the litigation forum is classic conduct inconsistent with an intent to arbitrate. Under *Morgan*, Mrs. Fister does not need to demonstrate prejudice; it is enough that Defendants substantially invoked the judicial process and thereby relinquished any contractual right to arbitrate. The facts here fit squarely within the waiver principles recognized in *Bashor* and *Cordillera*: Defendants' failure to timely assert arbitration, combined with their active participation in litigation, forfeits any right to compel arbitration at this late stage.

**V. Public Policy Against Elder Exploitation Weighs Against Enforcement**

Finally, compelling arbitration under these circumstances would offend Colorado's strong public policy against the financial exploitation of at-risk elders. Colorado law provides heightened protections for elderly individuals who are targeted by fraud and exploitation. In fact, Colorado has criminalized the "criminal exploitation of an at-risk person" (including at-risk elders) as a serious felony offense. *See* C.R.S. § 18-6.5-103(7.5) (defining exploitation of an at-risk adult, such as using deception, harassment, or undue influence to deprive an at-risk person of property, and classifying such exploitation as a felony). The conduct alleged in this case – tricking a vulnerable senior into unwanted financial obligations through fraud and intimidation – is precisely the kind of abuse that Colorado law condemns.

Forcing an elderly widow like Mrs. Fister into a secretive arbitration process based on unauthorized e-signatures and coerced "agreements" would undermine both the FAA's fundamental requirement of true consent and Colorado's clear policy of protecting seniors from exploitation. In light of the protective public policy at play, this Court should be especially wary

of enforcing an arbitration clause that is itself a product of the very exploitation Colorado aims to prevent.

**Jury Demand**

Pursuant to 9 U.S.C. § 4, Plaintiff demands a jury trial on the making and validity of the alleged arbitration agreements. Mrs. Fister unequivocally contests that she ever agreed to arbitrate (due to lack of authorization and genuine assent), and the FAA entitles her to have a jury resolve any factual disputes regarding the formation of the arbitration agreements.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court DENY Defendants' Motion to Compel Arbitration. In the alternative, should any material fact issues be found regarding the formation or validity of the arbitration agreements, Plaintiff requests that the Court set the matter for a prompt trial by jury as provided in 9 U.S.C. § 4 to determine whether any enforceable agreement to arbitrate was ever made.

DATED this 31st day of October, 2025.

Respectfully submitted,

*/s/ Jeffrey A. Wells*

Jeffrey A. Wells
The Wells Law Firm LLC
422 Main Street, #202
Fort Morgan, CO 80701
Phone: 970-743-3040
Email: jeff@wellslawfirmllc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2025 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record for all parties.

*/s/ Lynda Seele*
Lynda Seele
The Wells Law Firm LLC