IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 25–cv–02002–GPG–MDB

JEANETTE FISTER,

      Plaintiff,

v.

CITIZENS FINANCIAL GROUP, INC.,
FREEDOM FOREVER COLORADO, LLC,
SOLAR MOSAIC, LLC,
AARON SCHNEIDER,
JOHN DOE, and
VIVINT HOME SECURITY SYSTEMS,

      Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants Aaron Schneider, Citizens Financial Group, Inc., and Vivint Home Security Systems' "Motion to Compel Arbitration or, in the Alternative, to Stay Pending Arbitration." (["Motion"], Doc. No. 38.) Plaintiff filed a response and then supplemented her response. (["Response"], Doc. No. 49; Doc. No. 50.) Defendants replied. (["Reply"], Doc No. 54.)

For the following reasons, the Motion is **GRANTED**.[1]

---

[1] Though the Tenth Circuit has not formally addressed whether motions to compel arbitration are non-dispositive, and thus within the authority of a magistrate judge, at least two courts of appeal have considered the issue and held that motions to compel arbitration are not dispositive. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010) (holding that a motion to compel arbitration is not dispositive because a district court retains authority to dissolve stay or review

## BACKGROUND

Plaintiff brings contract, tort, and statutory claims against four businesses and two individuals in connection with the purchase of a home security and solar panel system for her home. (["Complaint"], Doc. No. 4 at 2-13, ¶¶ 13-167.) Plaintiff alleges that Defendants Schneider and Doe falsified her consent to purchase the solar panel system while they were installing the home security system. (*Id.* at 2-3, ¶¶ 13-20.) Approximately one month after the lawsuit was removed to federal court, Defendant Solar Mosaic, LLC filed a suggestion of bankruptcy under 11 U.S.C. §§ 101-1330, and proceedings against it were automatically stayed pursuant to 11 U.S.C. § 362. (*See* Doc. Nos. 1, 30, 35.)

On August 22, 2025, Defendants Schneider, Citizens Financial Group, Inc., and Vivint Home Security Systems ("Moving Defendants") filed the instant Motion, arguing that the security system purchase agreement contained a valid and binding arbitration clause ("Arbitration Clause") requiring Plaintiff to submit her claims against the Moving Defendants to arbitration. (Doc. No. 38 at 5-12.) In the alternative, the Moving Defendants ask that Plaintiff's claims against Defendants Schneider and Citizens Financial Group, Inc., who were not signatories to the security system purchase agreement, be stayed pending arbitration between Plaintiff and Vivint Home Security Systems. (*Id.* at 13-24.)

In response, Plaintiff insists the Court must decide whether: (1) her consent to the Arbitration Clause was obtained through duress; (2) the home security and solar panel

---

arbitration award); *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 Fed.Appx. 131, 133 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation."); *see also Adetomiwa v. College*, 2015 WL 9500787, at *1 (D. Colo. Dec. 31, 2015).

agreements are inseparable such that the claims related to the solar panel agreement anchor

Plaintiff's other claims in court; (3) the Arbitration Clause is overbroad and unconscionable; (4)

Defendants waived arbitration by invoking the Court's processes; and (5) public policy weighs

against enforcing the Arbitration Clause. (Doc. No. 49 at 3-10.) Plaintiff demands a jury trial "on

the making and validity of the alleged arbitration agreements." (*Id.* at 10.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs. *Belnap v. Iasis Healthcare*, 844 F.3d

1272, 1279 (10th Cir. 2017). Section 4 of the FAA authorizes "[a] party aggrieved by the alleged

failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to]

petition any United States district court ... for an order directing that such arbitration proceed ...."

9 U.S.C. § 4. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district

court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on

issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*,

470 U.S. 213, 218 (1985) (emphasis in original).

When the parties dispute the existence of an agreement to arbitrate, the Court applies a

framework similar to that it would apply on a motion for summary judgment—a motion to

compel arbitration may be granted "if there are no genuine issues of material fact regarding the

parties' agreement" to arbitrate and the Court should "give to the opposing party the benefit of

all reasonable doubts and inferences that may arise." *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d

1248, 1261 (10th Cir. 2012) (quotations omitted).

Though the FAA specifies the procedures for enforcing an arbitration agreement, "[a]

federal court must apply state contract law principles when determining whether an arbitration

agreement is valid and enforceable." *Nesbitt v. FCNH, Inc.*, 74 F. Supp. 3d 1366, 1371 (D. Colo. 2014). Similarly, "[t]he scope of an arbitration agreement ... is a question of state contract law." *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021). Despite the application of state law on issues of validity, enforceability, and scope, the Court keeps in mind that the FAA expresses a "liberal federal policy favoring arbitration agreements." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Consistent with this liberal policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25.

## ANALYSIS

Defendants seek to compel Plaintiff to arbitrate her claims, including those related to the solar panel contract, pursuant to the Arbitration Clause in the home security agreement. (Doc. No. 38 at 5-14.) In response, Plaintiff appears to concede that the contracts are interconnected and the Arbitration Clause has broad reach, beyond disputes that may arise from the home security agreement. (*See, e.g.*, Doc. No. 49 at 4-6 (stating the contracts are "interconnected" and the Arbitration Clause "includ[es] disputes" concerning the solar contract).) But she raises several defenses to enforcement, including that: (1) her consent to the contract was procured through "duress"; (2) the Arbitration Clause is "overly broad and unconscionable"; (3) Defendants "waived arbitration by invoking the judicial process"; and (4) enforcing the Arbitration Clause would contravene public policy. (*Id.* at 5-10.) Plaintiff also demands a jury trial "on the making and validity of the alleged arbitration agreements." (*Id.* at 10.)

The Court begins by addressing the scope of the Arbitration Clause and its applicability to Plaintiff's claims. Then, the Court addresses each of Plaintiff's arguments seeking to invalidate the Arbitration Clause or render it unenforceable.

## I.    Does the Arbitration Clause, as written, apply to all of Plaintiff's claims?

It is a "fundamental proposition that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

Here, Defendants argue the Arbitration Clause is broad and encompasses all of Plaintiff's claims. (Doc. No. 38 at 7-10.) Plaintiff appears to agree. In fact, she argues that home security and solar panel contracts "are interdependent and cannot be separated" because they "share a common nucleus of operative facts." (Doc. No. 49 at 4-5.) Moreover, there is no dispute that Plaintiff signed the home security contract that contains the Arbitration Clause. (*See, e.g.*, Doc. No. 4 at 3-4, ¶¶ 19, 37 (noting Plaintiff "intended to buy the security system" and "agreed to . . . purchasing a security system"). And all of Plaintiff's arguments, which involve either the enforceability of the Arbitration Clause or the validity of the underlying contract, seem to presuppose that the Arbitration Clause encompasses disputes arising from both contracts. (*See id.* at 3-10.) Moreover, the Arbitration Clause is not limited to certain claim types; it broadly applies to all claims "directly or indirectly arising out of, relating to, or in connection with" the home security agreement, which as Plaintiff concedes, is interconnected to the solar panel contract. (Doc. No. 38, Ex. A at 3, ¶ 19.) Accordingly, the Court proceeds from the premise that the Arbitration Clause applies to all of Plaintiff's claims.

**II.       Is the Arbitration Clause valid and enforceable?**

"The FAA reflects the fundamental principle that arbitration is a matter of contract."

*Rent-A-Center, W., Inc.*, 561 U.S. at 67. Under the FAA, arbitration agreements are "valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. Generally, "[a] court addressing a motion to compel

arbitration therefore must first determine whether there exists an enforceable agreement to

arbitrate." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) (citing

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010); *Rent-A-Center, W.,

Inc.*, 561 U.S. at 71). Arbitration agreements "may be invalidated by 'generally applicable

contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center, W., Inc.*, 561

U.S. at 68 (quoting *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

Generally, challenges to the validity of an arbitration agreement take one of two forms.

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). One form "challenges

specifically the validity of the agreement to arbitrate." *Id.* (citing *Southland Corp. v. Keating*,

465 U.S. 1, 4-5 (1984)). And the other form "challenges the contract as a whole, either on a

ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced),

or on the ground that the illegality of one of the contract's provisions renders the whole contract

invalid." *Id.* The form of a challenge will dictate the proper forum for resolving the dispute: "a

challenge to the validity of the contract as a whole, and not specifically to the arbitration clause,

must go to the arbitrator." *Id.* at 449. But when a challenge "goes to the 'making' of the

agreement to arbitrate—the federal court may proceed to adjudicate it." *Prima Paint Corp. v.

Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).

**A. Duress**

Plaintiff asserts that "her signature on the security contract was procured through duress." (Doc. No. 49 at 4.) In Plaintiff's view, this issue "concerns the very formation or existence of the agreement," and consequently, "the court must resolve the issue first." (*Id.*) Defendants respond that Plaintiff's defense of duress "must be decided by the arbitrator" because it is a challenge to the entire home security agreement, not just the Arbitration Clause. (Doc. No. 54 at 2-3.) The Court agrees with Defendants.

In her Response, Plaintiff repeatedly confirms that she is attacking the whole home security agreement, not just the arbitration clause. For example, she plainly alleges that "her signature on the *security contract* was procured through duress." (Doc. No. 49 at 4 (emphasis added).) And in reference to both the solar panel and home security agreements, she claims "one . . . was procured by outright fraud . . . and the other was obtained through coercion and duress." (*Id.*) As other courts in this district have recognized, a claim of duress as to the entire agreement is an issue for the arbitrator. *See Tolliver v. True*, 2007 WL 2909393, *2-3 (D. Colo. Sep. 28, 2007) (concluding that claim of "duress" in "the making of the entire agreement . . . must be submitted to arbitration"); *Adetomiwa v. Redstone Coll.*, 2015 WL 13730880, at *5 (D. Colo. Oct. 20, 2015) (declining to decide "fraud and duress challenges . . . not 'specific[] [to] the validity of the agreement to arbitrate'").

Plaintiff cites the U.S. Supreme Court's decision in *Granite Rock Co. v. International Brotherhood of Teamsters* for the proposition that "where the dispute at issue concerns contract formation, courts decide the issue of arbitrability." (Doc. No. 49 at 3 (citing 561 U.S. 287).) That may be true, but duress is not a question of contract formation, it is a question of

voidability.  *See* Restatement (Second) of Conts. § 177 cmt. c. And when the inquiry concerns voidability of a contract, the dispute concerns validity, not formation. *See Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 382 (1st Cir. 2011) (noting that voidability is a matter of validity). *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1 (noting that "[t]he issue of the contract's validity is different from the issue whether any agreement . . .was ever concluded."). Because "the issue of the contract's validity is considered by the arbitrator in the first instance," *Buckeye Check Cashing, Inc.*, 546 U.S. at 446, Plaintiff's duress argument does not give Plaintiff a basis to avoid arbitration.

### B.  Unconscionability

Plaintiff argues that "the arbitration clause is unenforceable due to its overbreadth and unconscionability." (Doc. No. 49 at 5.) Defendants respond that in order to have her unconscionability challenge heard in federal court, Plaintiff must attack the Arbitration Clause's delegation provision, specifically. (Doc. No. 54 at 5.) Because she has not done so, the issue is for the arbitrator to decide. (*Id.*)

A delegation provision "is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, W., Inc.*, 561 U.S. at 68. Through such a provision, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69. Here, the Arbitration Clause includes the following delegation provision:

> The arbitrator shall decide issues of arbitrability of claims and shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement.

(Doc. No. 38, Ex. A at 3.) In other words, the parties "clearly and unmistakably provide[d]" that the arbitrator would resolve threshold questions of arbitrability.[2] *See id.* at 67.

In *Rent-A-Center, West, Inc. v. Jackson*, the Supreme Court considered whether a party's argument that an arbitration agreement was unconscionable could be resolved by a court despite the inclusion of a delegation clause. *See id.* at 65. The court answered, no. *Id.* at 72. The delegation provision "gave the arbitrator 'exclusive authority to resolve any dispute relating to the . . . enforceability of'" the arbitration agreement. *Id.* at 71. Thus, unless the appellee "challenged the delegation provision specifically," "any challenge to the validity of the [arbitration] Agreement as a whole [was] for the arbitrator." *Id.* at 71-72 (quoting *Buckeye Check Cashing, Inc.*, 546 U.S. at 445).

So too, here. Plaintiff asserts that the Arbitration Clause is substantively unconscionable under the Colorado Supreme Court's seven-factor test from *Davis v. M.L.G. Corp.*, 712 P.2d 985, 986 (Colo. 1986). (Doc. No. 49 at 6.) This is so because it "purports to sweep in 'any and all disputes' between" Plaintiff and Defendants, "including disputes arising from the separate solar financing agreement to which she never consented." (*Id.*) But the Court "need not consider that claim because none of [Plaintiff's] substantive unconscionability challenges are specific to the delegation provision." *Rent-A-Center, W., Inc.*, 561 U.S. at 73; *see* (Doc. No. 49 at 6-7.)

---

[2] This conclusion is further supported by the following provision in the Arbitration Clause: "The arbitration shall be administered by [Judicial Arbitration and Mediation Services, Inc.] in accordance with the JAMS Consumer Arbitration Minimum Standards." (Doc. No. 38, Ex. A at 3.) The Tenth Circuit has held that "by incorporating the JAMS Rules into" an arbitration agreement, the parties "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator, 'including disputes over the . . . interpretation or scope of the agreement under which Arbitration is sought.'" *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) (quoting JAMS Rule 8(c)).

Accordingly, Plaintiff's unconscionability argument is more appropriately resolved by the arbitrator.

### C. Waiver

"[T]he right to arbitration, like any other contract right, can be waived." *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772 (10th Cir. 2010) (quoting *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980)). The U.S. Supreme Court has recognized that a waiver defense falls within a class of "'procedural' questions which grow out of [an arbitration] dispute and bear on its final disposition." *Howsam*, 537 U.S. at 84 (quoting *John Wiley & Sons, Inc. v. Livingston* , 376 U.S. 543, 546-47 (1964)). Such questions "are presumptively *not* for the judge, but for an arbitrator, to decide." *Id.* (emphasis in original). "So, too, the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Plaintiff argues that Defendants waived their right to arbitration by "remov[ing] this action to federal court and litigat[ing] it—engaging in motion practice and invoking the Court's processes." (Doc. No. 49 at 8-9.) Defendants respond that, by including a delegation clause and incorporating the JAMS rules into the Arbitration Clause, the parties agreed to submit waiver issues to the arbitrator. (Doc. No. 54 at 7-8.)

Defendants place too much weight on *Goldgroup Resources, Inc. v. DynaResources de Mexico, S.A. de C.V.* for the proposition that where "the parties agreed to arbitrate arbitrability issues," that "includ[es] the issue of waiver." 994 F.3d 1181, 1191 (10th Cir. 2021). (Doc. No. 54 at 7-8.) In *Goldgroup*, the appellant did "not challenge the district court's conclusion that waiver

is a question of arbitrability." 994 F.3d at 1190. Thus, "for purposes [the] appeal," the court "*assume[d]* that the district court's conclusion [was] correct." *Id.* (emphasis added).

Nevertheless, and under these circumstances, Plaintiff's waiver argument should go to the arbitrator. The FAA creates a clear presumption "in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. That presumption is doubly strong here, where the Arbitration Clause incorporates a delegation provision and the JAMS rules. As noted above, this evinces a clear and unmistakable intent to send *all* issues of arbitrability to the arbitrator. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) (holding that incorporation of JAMS rules into clause showed clear and unmistakable intent to have arbitrator decide arbitrability issues); *Rent-A-Center, W., Inc.*, 561 U.S. at 68-69 (holding that delegation provision revealed intent to have arbitrator decide arbitrability issues).

### D.  Public Policy

Plaintiff contends that "compelling arbitration under these circumstances would offend Colorado's strong public policy against the financial exploitation of at-risk elders." (Doc. No. 49 at 9-10.) Her argument fails for several reasons. First, Plaintiff cites no authority for the proposition that a court can invalidate an arbitration agreement based on Colorado public policy. *See Rocky Mountain Wild v. Dallas*, 636 F. Supp. 3d 1289, 1301 (D. Colo. 2022) ("In general, the Court need not address conclusory arguments that are unsupported by legal authority."). Second, the Supreme Court has rejected the notion that state public policy can categorically render an arbitration clause unenforceable. *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012). And third, Plaintiff points to Colo. Rev. Stat. § 18-6.5-103 as the source of this

11

purported public policy, but she does not explain how she fits the definition of "at-risk persons," or how arbitration, specifically, would violate the policy associated with this statute.[3]

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration or, in the Alternative, to Stay Pending Arbitration (Doc. No. 38) is **GRANTED**. The parties are directed to notify the Court no later than twenty days after any final order on arbitration and, if such notification has not already been provided, the parties shall file a status report by October 1, 2026.

Dated this 31st day of March, 2026.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge

---

[3] Moreover, under Plaintiff's theory, "[a]ny statute preempted by the FAA could be enforced by just applying the 'public policy' of the statute under some common-law doctrine, such as unconscionability." *THI of N.M. at Hobbs Ctr., LLC*, 741 F.3d 1162, 1170 (10th Cir. 2014). But the Tenth Circuit has foreclosed such a possibility. *See Id.* at 1169-70.